IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | § | |
| | § | Case No.  4:11-cv-00695 |
| **Plaintiff** | § | |
| | § | |
| vs. | § | JURY DEMANDED |
| CLEARCORRECT, INC., | § | |
| CLEARCORRECT OPERATING, LLC, | § | |
| and CLEARCORRECT HOLDINGS, LLC | § | |
| | § | |
| **Defendants.** | | |

**CLEARCORRECT'S RENEWED MOTION FOR SUMMARY JUDGMENT
(ALIGN'S TERMINAL DISCLAIMERS)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES..........................................................................................................iii

1. NATURE AND STAGE OF THE PROCEEDING. ................................................................ 1

2. ISSUES TO BE RULED UPON AND STANDARD OF REVIEW. ....................................... 1

3. SUMMARY. .............................................................................................................................. 2

4. FACTUAL BACKGROUND. ................................................................................................... 2

5. LEGAL AUTHORITIES AND ARGUMENT. ........................................................................ 5

    5.1.    Align's '863 Patent expired on May 5, 2007 along with the Breads '991 Patent. ............ 5

    5.2.    Align's submission of a "corrected" terminal disclaimer did not resurrect the expired '863 Patent or otherwise extend its disclaimed term. ....................................................... 6

    5.3.    The '863 Patent will always be subject to the 2003 terminal disclaimer because USPTO rules no longer provide a process for removing it. ........................................................ 10

    5.4.    The '863 Patent was never enforceable because Align never owned the Breads '991 Patent. .................................................................................................................. 12

    5.4.    The '248 Patent expired on May 5, 2007 because it is linked to the expiration of the '863 Patent. ...................................................................................................... 14

6. CONCLUSION. ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 2

*Burandt v. Dudas,* 528 F.3d 1329 (Fed. Cir. 2008) ........................................................................ 2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 1

*Gilead Sciences, Inc. v. Genentech, Inc*., 753 F.3d 1208 (Fed. Cir. 2014) ...................................... 5

*In re Dinsmore*, 757 F.3d 1343 (Fed. Cir. 2014) .......................................................................... 13

*Japanese Found. for Cancer Research v. Lee*, 773 F.3d 1300 (Fed. Cir. 2014) ........................ 9-12

*Johnston v. IVAC Corp*., 885 F.2d 1574 (Fed. Cir. 1989) ............................................................... 1

*Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483 (Fed. Cir. 1985) ............................ 12

*SRI Int'l v. Matsushita Elec. Corp. of Am*., 775 F.2d 1107 (Fed. Cir. 1985) .................................. 1

**Statutes**

35 U.S.C. § 253 ................................................................................................................................ 5

37 C.F.R. § 1.182 ............................................................................................................................ 8

37 C.F.R. § 1.321 ............................................................................................................................ 6

FED. R. CIV. P. 56 ............................................................................................................................ 1

# CLEARCORRECT'S RENEWED MOTION FOR SUMMARY JUDGMENT
## (ALIGN'S TERMINAL DISCLAIMERS)

ClearCorrect, Inc., ClearCorrect Operating, LLC, and ClearCorrect Holdings, LLC (collectively "ClearCorrect") move for summary judgment that Align Technology, Inc.'s U.S. Patent No. 6,705,863 (the "'863 Patent") and U.S. Patent No. 7,125,248 (the "'248 Patent") expired no later than May 5, 2007 by virtue of terminal disclaimers Align filed and that the '863 Patent never became effective because it never complied with the terms of its terminal disclaimer.

A predecessor of this motion was filed on September 6, 2017 [Dkt. No. 187] and was fully briefed by all parties. Once the parties sought to suspend the case for settlement negotiations, the Court denied the motion, without prejudice against re-urging it later. [Dkt. No. 225].

**1.      NATURE AND STAGE OF THE PROCEEDING.**

This is a patent infringement case. Align filed its final infringement contentions on September 1, 2017 and alleged infringement of nine patents, including the '863 and '248 Patents. The case is scheduled for trial during April of 2019.

**2.      ISSUES TO BE RULED UPON AND STANDARD OF REVIEW.**

The issue to be ruled upon is whether the '863 and '248 Patents expired no later than May 5, 2007 as a result of terminal disclaimers Align filed during the patents' prosecution.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579–80 (Fed. Cir. 1989). The Federal Rules of Civil Procedure are applied to patent cases the same as any other case, and the summary judgment standard is the same for all cases. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc). On a motion for summary judgment, the burden of proof on the contested issue remains with the party bearing the burden of proof at trial, regardless of whether that party is the movant or the respondent. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986). The Federal Circuit reviews a District Court's grant of summary judgment under the de novo standard. *Burandt v. Dudas,* 528 F.3d 1329, 1332 (Fed. Cir. 2008).

3.   **SUMMARY.**

The patent examiner reviewing Align's application for the '863 Patent rejected several claims because they were too similar to those in other Align patents when taken "in view of" U.S. Patent No. 4,856,991 ("the Breads '991 Patent"). Align overcome those rejections and obtained the patent by filing a "terminal disclaimer" that limited the '863 Patent's term to that of the Breads '991 Patent—a term that undisputedly ended on May 5, 2007.

After May 5, 2007 passed and the '863 Patent expired, Align attempted to resurrect it by filing a second terminal disclaimer Align entitled "Correction of Terminal Disclaimer." USPTO rules in place at the time, however, only permitted Align to petition for a "Certificate of Correction" to amend its filing. But Align never filed such a petition and never sought to remove the first terminal disclaimer from the file history. These failures mean the first terminal disclaimer remains in place, along with its link to the Breads '991 Patent that expired May 5, 2007. Even more damaging is that Align's first terminal disclaimer contained an "agreement" that the '863 Patent would be enforceable only while it and the Breads '991 Patent were both owned by Align. Because Align has admitted it never owned the Breads '991 Patent, the '863 Patent was never enforceable.

Finally, Align filed a separate terminal disclaimer in its prosecution of the '248 Patent that limited the term of that patent to the term of the '863 Patent. Align's '248 Patent therefore expired no later than May 5, 2007, assuming it was ever enforceable.

4.   **FACTUAL BACKGROUND.**

As stated above, the predecessor of this motion was previously submitted to the Court with full briefing by all parties. Based on the evidence attached to this restated motion and embraced

by the previous submissions, the following material facts are not in dispute.

Align filed the application that issued as the '863 patent (Application No. 10/040,269) with the USPTO on October 29, 2001.[1] On October 6, 2003, the patent examiner issued an office action rejecting claims 13–20 under the judicially created doctrine of obviousness-type double patenting in light of three Align patents.[2] Claims 13–18 were rejected under this doctrine as being unpatentable over claims 1–5 of U.S. Patent No. 5,975,893 ("the '893 patent") in view of U.S. Patent No. 4,856,991 ("the Breads '991 Patent").[3] Using the same doctrine, the examiner also rejected claim 13 as unpatentable over U.S. Patent No. 6,524,101 ("the '101 patent") in view of the Breads '991 Patent and claims 19 and 20 as unpatentable over U.S. Patent No. 6,309,215 ("the '215 patent") in view of the Breads '991 Patent.[4] The examiner also rejected claim 20 under the same doctrine as unpatentable over the '215 patent in view of the Breads '991 Patent.[5]

Align owns the '893, '101, and '215 patents but admits it has never owned the Breads '991 Patent.[6]

In response to the examiner's rejections, Align filed a terminal disclaimer in 2003 ("the 2003 terminal disclaimer") stating that Align disclaimed the terminal part of the term of the patent issuing from the pending application (i.e., the '863 patent) that would extend beyond the terms of the '101 and '215 patents and the Breads '991 Patent.[7] The disclaimer stated that the patent granted from the pending application "shall be enforceable only for and during such period that it and the

---

[1] Exhibit 1-A ('863 Patent); *see also* Align admission at Dkt. No. 193 at p. 3.
[2] Exhibit 1-B at pp. 3-5; *see also* Align admission at Dkt. No. 193 at p. 3.
[3] Exhibit 1-B at pp. 3-4; *see also* Align admission at Dkt. No. 193 at p. 3.
[4] Exhibit 1-B at pp. 3-4; *see also* Align admission at Dkt. No. 193 at p. 3.
[5] Exhibit 1-B at pp. 5; *see also* Align admission at Dkt. No. 193 at p. 3.
[6] Align admission at Dkt. No. 193 at pp. 3-4 ("Align owns the '893, '101, and '215 patents but does not own the Breads patent. . . . the Breads patent, which Align never owned.").
[7] Exhibit 1-C; *see also* Align admission at Dkt. No. 193, pp 3-4.

prior patent are commonly owned."[8] The '863 Patent issued on March 16, 2004.[9] In 2005, the USPTO ordered reexamination of the '863 Patent.[10] During that reexamination, on June 28, 2007, Align filed a second terminal disclaimer bearing the title "Correction of Terminal Disclaimer."[11] But at no time did Align petition the USPTO for a "Certificate of Correction" concerning the 2003 terminal disclaimer or otherwise seek to remove it from the '863 file history.[12] Align was well-aware of the process for petitioning the USPTO for a "Certificate of Correction" as it actually did so during prosecution of the '863 Patent on a matter unrelated to the 2003 terminal disclaimer.[13] To this day, the 2003 terminal disclaimer remains, unchanged, in the '863 Patent's file history.[14]

Align filed the application that issued as the '248 patent (Application No. 10/660,857) on September 12, 2003.[15] In February, 2006, the examiner issued an office action rejecting claims 1 and 10–14 under the doctrine of obviousness-type double patenting as being unpatentable over claims 13 and 14 of the '863 patent in view of Adell (U.S. Patent No. 4,983,334).[16] The examiner also made other double patenting rejections over other combinations of patents.[17] Align filed a terminal disclaimer for any portion of the statutory period of the '248 patent extending beyond the expiration date of the '863 patent.[18] The '248 patent issued on October 24, 2006.[19]

---

8     *Id.*
9     Exhibit 1-A; *see also* Align admission at Dkt. No. 193 at p. 4.
10    Exhibit 1-D; *see also* Align admission at Dkt. No. 193 at p. 3.
11    Exhibit 1-E; *see also* Align admission at Dkt. No. 193, *passim*.
12    Exhibit 1 at ¶ 16.
13    Exhibit 1-F.
14    Exhibit 1 at ¶ 16.
15    Exhibit 1-G; *see also* Align admission at Dkt. No. 193 at p. 4.
16    Exhibit 1-H; *see also* Align admission at Dkt. No. 193 at p. 4.
17    *Id.*
18    Exhibit 1-I; *see also* Align admission at Dkt. No. 193 at p. 5.
19    Exhibit 1-G; *see also* Align admission at Dkt. No. 193 at p. 5.

5.     **LEGAL AUTHORITIES AND ARGUMENT.**

    5.1.     **Align's '863 Patent expired on May 5, 2007 along with the Breads '991 Patent.**

The Breads '991 Patent was filed on May 5, 1987 and was issued on August 15, 1989.[20] Under the Uruguay Round Agreements Act, the patent was entitled to the greater patent term of seventeen years from grant or twenty years from filing. Thus, it was entitled to a patent term of twenty years from filing and expired May 5, 2007. The expiration date of the Breads '991 Patent was not challenged by Align in its earlier briefing and therefore appears beyond dispute.

It is also beyond dispute that Align's 2003 terminal disclaimer tied the term of its '863 Patent to the term of the Breads '991 Patent in order to avoid the examiner's double patenting rejections that expressly referenced the Breads '991 Patent. The use of terminal disclaimers to avoid double patenting rejections is governed by 35 U.S.C. § 253. The Federal Circuit has held that under this statute, terminal disclaimer clauses can overcome the double patenting prohibition because the terminal disclaimer causes the "patents to expire together," thus eliminating any time extension. *Gilead Sciences, Inc. v. Genentech, Inc.*, 753 F.3d 1208, 1214 (Fed. Cir. 2014). The Federal Circuit has explained "that 35 U.S.C. § 253's terminal disclaimer provision provide[s] patent owners a remedy against a double patenting charge by 'permit[ting] the patentee to cut back the term of a later issued patent so as to expire at the same time as the earlier issued patent.'" *Id*. at 1213.

Align dedicated to the public the terminal statutory term of the '863 Patent that exceeded the term of the '991 Patent. The '991 Patent expired on May 5, 2007. Accordingly, the '863 Patent expired no later than May 5, 2007.

---

[20]     Exhibit 1-J.

### 5.2. Align's submission of a "corrected" terminal disclaimer did not resurrect the expired '863 Patent or otherwise extend its disclaimed term.

Align does not dispute that application of its 2003 terminal disclaimer would result in the expiration of the '863 Patent on May 5, 2007. Instead, Align only argues that it filed a second terminal disclaimer on June 28, 2007 with the caption "correction." The "corrected" terminal disclaimer of 2007 attempted to replace reference to the Breads '911 Patent with a reference to the Chishti '893 Patent in hopes of expending the '863 Patent's term by more than ten years.

The significant flaw in Align's position is that it made no attempt to follow USPTO rules to withdraw its 2003 terminal disclaimer. The Manual of Patent Examining Procedure or "MPEP" is a compendium of U.S. Patent Office published policies, practices, and procedures, and includes, among other things, guidance for patent practitioners and patent examiners on various aspects of Patent Office practice. Terminal disclaimer practice is discussed at length in § 1490 of the MPEP and is regulated by 37 C.F.R. § 1.321. When Align submitted its "corrected" terminal disclaimer in 2007, edition 8, revision 5 of the MPEP was in effect.[21]

Paragraph VII (B) of Section 1490 specifically describes withdrawal of a terminal disclaimer once (as here) the patent has been issued. The version of that paragraph in effect at the time of Align filed its "corrected" terminal disclaimer provides that the only method of altering a terminal disclaimer is through a petition the USPTO for a "Certificate of Correction," and then only in very limited circumstances that are not applicable here:

> Certificates of Correction (35 U.S.C. 255) are available for the correction of an applicant's mistake. The scope of this remedial provision is limited in two ways — by the nature of the mistake for which correction is sought and the nature of the proposed correction. In re Arnott, 19 USPQ2d 1049 (Comm'r Pat. 1991). The nature of the mistake for which correction is sought is limited to those mistakes that are:
>
> (A) of a clerical nature,

---

[21]  Exhibit 1-K at p. 1400-116.

> (B) of a typographical nature, or
> (C) of a minor character.
>
> The nature of the proposed correction is limited to those situations where the correction does not involve changes which would:
>
> (A) constitute new matter, or
> (B) require reexamination.
>
> A mistake in filing a terminal disclaimer does not fall within any of the categories of mistake for which a certificate of correction of applicant's mistake is permissible, and any attempt to remove or nullify the effect of the terminal disclaimer would typically require reexamination of the circumstances under which it was filed.[22]

The preamble to Paragraph VII adds "After a patent or reexamination certificate issues, it is unlikely that a recorded terminal disclaimer will be nullified."[23]

Thus, for a period of time between the August 2006 version of the MPEP in effect at time Align filed its "corrected" terminal disclaimer and the current 2018 revision of the MPEP, the MPEP stated that some transposition errors could be corrected by petition under 37 C.F.R. § 1.182. In those situations, however, the applicant would still forfeit any patent term that would have been forfeited under the errant terminal disclaimer:

> Where a terminal disclaimer was submitted to overcome a nonstatutory double patenting rejection (made during prosecution of an application which has now issued as a patent), and the numbers for the patent being disclaimed in the terminal disclaimer were inadvertently transposed (e.g., 6,444,316 written as 6,444,136), a petition under 37 CFR 1.182 may be filed to withdraw the terminal disclaimer with the incorrect (transposed) patent number (recorded in the issued patent), and replace it with a corrected terminal disclaimer having the correct patent number.  In this instance, the inadvertency is clear from the record.  If the transposing error resulted in an earlier patent term expiration date than provided by the corrected terminal disclaimer, a statement must be included in the corrected terminal disclaimer that the term is limited to the shorter expiration date of the orginal [sic] terminal disclaimer or the corrected terminal disclaimer.  The absence of such a statement will result in the Office entering the second disclaimer and not withdrawing the original disclaimer.[24]

---

22   *Id.*
23   Exhibit 1-K at p. 1400-115.
24   Exhibit 1-L at p. 1400-145.

Align, however, did not file such a petition under 37 C.F.R. § 1.182. There can be no doubt that Align knew how to file a petition for "Certificate of Correction" as it actually did so during the prosecution of the '863 Patent on a matter unrelated to the terminal disclaimer.[25] Further, to the extent the "corrected" terminal disclaimer could even be considered equivalent to such a petition, Align did not include the necessary statement in it limiting the term of the '863 Patent to the shorter expiration date of the patent terms resulting from the filing of the 2003 terminal disclaimer and the "corrected" terminal disclaimer. In either case—petition or no petition, statement or no statement—the term of the '863 Patent would not have extended past the shortest of the patent terms resulting from the filing of the two terminal disclaimers, namely May 5, 2007. As described in section 5.3 below, the current version of the MPEP removes even this practice.

Align's "corrected" terminal disclaimer also failed to extend the '863 Patent's term because it was filed during a reexamination proceeding. With particular regard to reexamination proceedings, Revision 5 of the eight edition of the MPEP, which was in effect at the time the "corrected" terminal disclaimer was filed in 2007, states that "[t]he mechanisms to correct a patent — Certificate of Correction (35 U.S.C. 255), reissue (35 U.S.C. 251), and reexamination (35 U.S.C. 305) — are not available to withdraw or otherwise nullify the effect of a recorded terminal disclaimer."[26] It further explains:

> [T]he nullification of a recorded terminal disclaimer would not be appropriate in a reexamination proceeding. There is a prohibition (35 U.S.C. 305) against enlarging the scope of a claim during a reexamination proceeding. As noted by the Board in *Anthony*, *supra*, if a terminal disclaimer was nullified, "claims would be able to be sued upon for a longer period than would the claims of the original patent. Therefore, the vertical scope, as opposed to the horizontal scope (where the subject matter is enlarged), would be enlarged."[27]

---

[25] Exhibit 1-F.
[26] Exhibit 1-K at p. 1400-116.
[27] *Id*.

8

Based on the terminal disclaimer framework established at the USPTO discussed above, the term of the '863 Patent is therefore controlled by the effects of the terminal disclaimers in both the 2003 terminal disclaimer and the "corrected" terminal disclaimer of 2007. The 2003 terminal disclaimer was filed, approved, and recorded during the original prosecution of the '863 Patent in 2003 to obviate the obviousness-type double patenting rejections. The "corrected" terminal disclaimer was filed, approved, and recorded by the USPTO during the reexamination of the '863 Patent in 2007, but only to give it effect to obviate the obviousness-type double patenting rejections over the newly identified prior commonly owned patent. The "corrected" terminal disclaimer did not, and could not, nullify the disclaimer with respect to the Breads '991 Patent in the 2003 terminal disclaimer because it was filed in an attempt to lengthen the term of the '863 Patent.

The USPTO's records including the file history of the '863 Patent still show the existence of the 2003 terminal disclaimer. Neither the file history of the reexamination nor other records of the USPTO show that the USPTO removed, withdrew, nullified, or replaced the 2003 terminal disclaimer. The USPTO's "approval" of the "corrected" terminal disclaimer in the reexamination did not address any withdrawal or nullification of the effect of the 2003 terminal disclaimer. No petition under 37 C.F.R. § 1.182 was ever filed to seek nullification of the 2003 terminal disclaimer nor was there any approval by the USPTO to nullify the 2003 terminal disclaimer and its effect on the term of the '863 Patent.

Even if Align filed a petition under 37 C.F.R. § 1.182 to seek nullification of the 2003 terminal disclaimer, the "error" in it was not a transposition error but an error in identifying the correct target patent—U.S. Patent No. 4,856,991 was accurately identified as Breads in the 2003 terminal disclaimer—an error not typically correctable by petition. Align's failure here is similar to that which caused the patent at issue in *Japanese Found. for Cancer Research v. Lee*, 773 F.3d 1300, 1302 (Fed. Cir. 2014). There, the applicant's attorney of record filed a statutory disclaimer to

9

disclaim "the entire term of all claims" in the relevant patent. *Japanese Found.*, 773 F.3d at 1302. About two months later, before the terminal disclaimer was even made public, the patent owner petitioned to withdraw the disclaimer. *Id*. The Federal Circuit upheld the USPTO's denial of the patent owner's request and noted "clerical or typographical mistakes [in terminal disclaimers] are generally understood to include simple mistakes such as obvious misspellings that are immediately apparent." *Id*. at 1306. Align does not suggest any clerical or typographical error.

Further still, the petition would have required a statement that "the term [of the '863 Patent] is limited to the shorter expiration date of the original terminal disclaimer [the 2003 terminal disclaimer] or the corrected terminal disclaimer."[28] Thus, because the 2003 terminal disclaimer included a disclaimer to the Breads '991 patent that resulted in a shorter expiration date than any of the disclaimers in the "corrected" terminal disclaimer, the 2003 terminal disclaimer limits the term of the '863 Patent to May 5, 2007. Therefore, in accordance with USPTO Procedures and Policy, the term of the '863 Patent beyond May 5, 2007 (the shortest expiration date across all disclaimers in the 2003 terminal disclaimer and the "corrected" terminal disclaimer) has been disclaimed.

### 5.3. The '863 Patent will always be subject to the 2003 terminal disclaimer because USPTO rules no longer provide a process for removing it.

The MPEP version in effect during 2007 allowed Align to file a petition under 37 C.F.R. § 1.182 seeking withdrawal of a recorded terminal disclaimed so long as it would not increase the patent term of the patent subject to terminal disclaimer. That process, however, has been

---

[28] Exhibit 1-L at p. 1400-145 ("If the transposing error resulted in an earlier patent term expiration date than provided by the corrected terminal disclaimer, a statement must be included in the corrected terminal disclaimer that the term is limited to the shorter expiration date of the orginal [*sic*] terminal disclaimer or the corrected terminal disclaimer.").

discontinued based on decisions at the U.S. Court of Appeals for the Federal Circuit.[29] Petitioning for a "Certificate of Correction" would never have extended the '863 Patent's term, but even that process is no longer available.

The current Rev. 08.2017 (January 2018) version of the MPEP states that "after issuance of a patent, a request to replace or remove a previously recorded terminal disclaimer will not be addressed on the merits."[30] A patent owner is permitted to file an additional terminal disclaimer and an explanation of any error it made, but the new terminal disclaimer is only an additional one—any allegedly erroneous terminal disclaimer remains in effect. According to current USPTO policy as stated in MPEP § 1490 (VIII)(B) there is no mechanism by which a patent owner can withdraw or nullify a recorded terminal disclaimer because public policy disfavors a return of something previously dedicated to the public:

> B.  After Issuance Of Patent
>
> The mechanisms to correct a patent — Certificate of Correction (35 U.S.C. 255), reissue (35 U.S.C. 251), reexamination (35 U.S.C. 305) and pre-AIA 35 U.S.C. 314), inter partes review (35 U.S.C. 316), post grant review (35 U.S.C. 326), and covered business method review — are not available to withdraw or otherwise nullify the effect of a recorded terminal disclaimer.  As a general principle, public policy does not favor the restoration to the patent owner of something that has been freely dedicated to the public, particularly where the public interest is not protected in some manner — e.g., intervening rights in the case of a reissue patent. See, e.g., *Altoona Publix Theatres v. American Tri-Ergon Corp.,* 294 U.S. 477, 24 USPQ 308 (1935).[31]

These USPTO rules are strict were updated to reflect the current state of Federal Circuit case law set forth in *In re Dinsmore*, 757 F.3d 1343, 1346 (Fed. Cir. 2014) and *Japanese Found.*, 773 F.3d at 1302 prohibiting post-issuance withdrawals of terminal disclaimers. The Federal Circuit has recognized the Patent Office has an "established policy . . . to deny any 'request to withdraw or

---

[29]  Exhibit 1-N at pp. 1-2.
[30]  Exhibit 1-O at p. 1400-155.
[31]  Exhibit 1-O at p. 1400-144.

11

amend a recorded terminal disclaimer in an issued patent on the grounds that the rules of practice and 35 U.S.C. § 253 do not include a mechanism for withdrawal or amendment of such a terminal disclaimer.'" *Japanese Found.*, 773 F.3d at 1302. The Federal Circuit has also upheld the Patent Office's policy, recognizing that the "statutory mechanisms available to correct a patent 'are not available to withdraw or otherwise nullify the effect of a recorded terminal disclaimer.'" *Id*. The purpose of these rules, as long noted by the Patent Office and Courts, is to avoid "gotcha" situations where a patent owner files a terminal disclaimer that puts subject matter into the public domain and subsequently brings a patent suit over that subject matter by arguing that the terminal disclaimer was withdrawn.

### 5.4. The '863 Patent was never enforceable because Align never owned the Breads '991 Patent.

More damaging than its failure to petition the USPTO for a correction of the 2003 terminal disclaimer is Align's admission that it never owned the Breads '991 Patent. When a terminal disclaimer is filed to obviate an obviousness-type double patenting rejection in a pending patent application, as Align did during prosecution of the '863 Patent, the terminal disclaimer must "[i]nclude a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting."[32] If ownership of the disclaimed patent is separated from the prior patent, the patent subject to the terminal disclaimer is not enforceable. *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 485 (Fed. Cir. 1985) (enforcing provision in terminal disclaimer providing that the disclaimed patent would "expire immediately" if it ceased to be commonly owner with the prior patents).

---

[32] Exhibit 1-K at p. 1400-118.

Align's 2003 terminal disclaimer included the statement that Align "hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned"[33]:

> The owner*, ALIGN TECHNOLOGY, INC., of 100 percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application, which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, as presently shortened by any terminal disclaimer, of prior U.S. Patent Nos. 6,524,101; 4,856,991; and 6,309,215. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

Thus, by this express provision the '863 patent was enforceable only while the '863 and '991 patents were commonly owned by Align. As described above, Align now concedes that it never owned the Breads '991 Patent.[34] As a result, Align has "agreed" that the '863 Patent was never enforceable.

Align's failure here is virtually identical to that in *In re Dinsmore*, 757 F.3d 1343 (Fed. Cir. 2014). There, the applicant submitted a terminal disclaimer in response to a rejection for obviousness-type double patenting. *Id*. at 1345. The patent owner in *Dinsmore* was more sympathetic that Align here because the patent cited in the disclaimer was by the same inventor but with a different owner. *Id.* The form terminal disclaimer contained the standard common ownership requirement discussed above for any patent that issued from the application and the prior patent. *Id*. at 1344. The relevant application then issued as a patent. *Id*. A little less than a year later, the applicants sought to reissue all claims of the patent, "seeking simply to remove the recorded terminal disclaimer without substituting a new one or amending any of the claims." *Id.* at 1345. The applicants claimed they made an "error" by filing the terminal disclaimer with reference to common ownership of the cited patents. *Id*. The USPTO denied the application. *Id*.

---

[33] Exhibit 1-C.
[34] Align admission at Dkt. No. 193 at pp. 3-4 ("Align owns the '893, '101, and '215 patents but does not own the Breads patent. . . . the Breads patent, which Align never owned.").

Ultimately, the Federal Circuit upheld the USPTO's refusal to withdraw the original terminal disclaimer, stating that the original filing was a choice, not an error:

> We affirm the Board's ruling because the applicants have not identified an "error" underlying the choices made in the original patent that they now seek to revise. We begin with the one clear assertion of error in the applicants' reissue declarations: that the recorded terminal disclaimer was ineffective or invalid. That assertion, however, is simply incorrect in the most straightforward sense.

*Id*. at 1347. The Federal Circuit then went further, effectively rejecting the same argument of "error" that Align makes here:

> At bottom, therefore, the applicants can only be arguing, more broadly, that the disclaimer was "ineffective" in the sense that it did not produce a patent they could actually enforce by themselves (without common ownership) and that they erred in producing that result (which they deem to be inoperativeness) by choosing to file the terminal disclaimer in order to include in the '568 patent, in their final form, the four claims that led to the obviousness-type double-patenting rejection. This argument, however, is an insufficient basis for reissue, even if the condition of present inability to enforce constitutes inoperativeness within the meaning of section 251. It is ultimately no more than a statement of a now-regretted choice, because the applicants identify no cognizable false or deficient understanding of fact or law that underlay the choice. This is not "error" as required by section 251.

*Id*.

### 5.4. The '248 Patent expired on May 5, 2007 because it is linked to the expiration of the '863 Patent.

It is undisputed, indeed Align admits, that Align filed a terminal disclaimer for any portion of the statutory period of the '248 Patent extending beyond the expiration date of the '863 Patent.[35] For the reasons stated above, the '863 Patent was never enforceable and its term expired no later than May 5, 2007. The term of the '248 Patent therefore expired no later than May 5, 2007.

---

[35] Exhibit 1-I.

6.     **CONCLUSION.**

ClearCorrect asks the Court to enter the accompanying order making findings of fact, reaching conclusions of law, and granting summary judgment that the '863 Patent and the '248 Patent expired no later than May 5, 2007 by virtue of terminal disclaimer and that the '863 Patent was never effective because it was never commonly owned with the Breads '991 Patent as required by the terminal disclaimer.

Respectfully submitted,

MCCLANAHAN • MYERS • ESPEY, L.L.P.

By   /s/   **Michael D. Myers**
Michael D. Myers
Texas State Bar No. 00791331
Robert H. Espey, II
Texas State Bar No. 24007163
Randy J. McClanahan
Texas State Bar No. 13391500
6750 West Loop South, Suite 920
Bellaire, TX 77401
Tel: (713) 223-2005
Fax: (713) 223-3664

*Attorneys for Defendants ClearCorrect Operating, LLC; ClearCorrect Holdings, LLC; ClearCorrect, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 14th day of December, 2018, a true and correct copy of the foregoing was served through the Court's ECF electronic filing system:

Lee Kaplan
Smyser, Kaplan & Veselka, L. L. P.
1100 Louisiana, Suite 2300
Houston, TX 77002

Thomas Counts
Paul, Hastings, LLP
101 California Street, Forth-Eighth Floor
San Francisco, CA 94111

By:     /s/
Michael D. Myers