UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., § | | |
| **Plaintiff** § | Case No.  4:11-cv-00695 | |
| § | | |
| § | | |
| vs. § | JURY DEMANDED | |
| CLEARCORRECT, INC., § | | |
| CLEARCORRECT OPERATING, LLC, § | | |
| and CLEARCORRECT HOLDINGS, LLC § | | |
| § | | |
| **Defendants.** | | |

**CLEARCORRECT'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT
CLAIMS 17 AND 18 OF U.S. PATENT NO. 7,578,674 ARE INVALID**

**TABLE OF CONTENTS**

**Page**

1. INTRODUCTION AND SUMMARY ................................................................................ 1

2. NATURE AND STAGE OF THE PROCEEDING ........................................................... 2

3. ISSUES TO BE RULED UPON AND STANDARD OF REVIEW .................................. 2

4. FACTUAL BACKGROUND .............................................................................................. 3

5. LEGAL AUTHORITIES AND ARGUMENT ................................................................... 3

    5.1. The doctrine of double-patenting prohibits the use of multiple patents to extend a patent monopoly ............................................................................................ 3

    5.2. Step one of the analysis: all the terms in these claims have their plain and ordinary meaning ................................................................................................. 6

    5.3 Step two of the analysis: the comparison of the claim language demonstrates that there are no non-obvious differences ............................................................... 6

    5.4 A comparison of the later '674 Patent claim 17 to the earlier '874 Patent claim 31 conclusively demonstrates double patenting .............................................. 7

    5.5 A comparison of the later dependent '674 Patent claim 18 to the earlier '874 Patent claim 31 also conclusively demonstrates double patenting ................ 11

6. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
  764 F.3d 1366 (Fed. Cir. 2014) ................................................................................................ 4, 5

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
  580 F.3d 1340 (Fed. Cir. 2009) ........................................................................................ 1, 2, 4, 5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................................................................3

*Application of Vogel*,
  422 F.2d 438 (CCPA 1970) ..........................................................................................................5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ......................................................................................................................3

*Eli Lilly & Co. v. Barr Labs., Inc.*,
  251 F.3d 955 (Fed. Cir. 2001) ......................................................................................................5

*Eli Lilly & Co. v. Teva Parenteral Med., Inc.*,
  689 F.3d 1368 (Fed. Cir. 2012) ....................................................................................................5

*Gilead Sciences, Inc. v. Natco Pharma Ltd.*,
  753 F.3d 1208 (Fed. Cir. 2014) ................................................................................................ 1, 4

*In re Hitachi Metals*, Ltd.,
  603 Fed. Appx. 976 (Fed. Cir. 2015) ...........................................................................................5

*Johnston v. IVAC Corp.*,
  885 F.2d 1574 (Fed. Cir. 1989) ....................................................................................................2

*Singer Mfg. Co. v. June Mfg. Co.*,
  163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118 (1896) .......................................................................3

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
  775 F.2d 1107 (Fed. Cir. 1985) ....................................................................................................2

*Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*,
  611 F.3d 1381 (Fed. Cir. 2010) ................................................................................................ 2, 4

**RULES**

FED. R. CIV. P. 56(a) ..........................................................................................................................2

ClearCorrect, Inc., ClearCorrect Operating, LLC, and ClearCorrect Holdings, LLC (collectively "ClearCorrect") move for partial summary judgment that claims 17 and 18 of Align Technology, Inc.'s U.S. Patent No. 7,578,674 (the "'674 Patent") are invalid under the doctrine of obviousness-type double patenting. Because the '674 Patent is an improper extension of patent rights in the expired U.S. Patent No. 7,134,874 (the "'874 Patent"), ClearCorrect asks the Court to enter an order granting summary judgment.

1. **INTRODUCTION AND SUMMARY.**

The Federal Circuit has repeatedly emphasized the importance of the doctrine of obviousness-type double patenting:

> It is a bedrock principle of our patent system that when a patent expires, the public is free to use not only the same invention claimed in the expired patent but also obvious or patentably indistinct modifications of that invention.

*Gilead Sci., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1214 (Fed. Cir. 2014). An inventor is not allowed to use multiple patents to extend the statutory time for a patent monopoly. Where an inventor attempts to extend the patent monopoly by making slight, but obvious, reconfigurations of patented subject matter, then filing the reconfigurations as "new" patentable matter, the "new" patents are invalid under the doctrine of obviousness-type double patenting. Obviousness-type double patenting is an issue for the court, not the jury. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1352 (Fed. Cir. 2009).

This is precisely the issue before the Court. Eight of the nine patents asserted in this case expired in October 2017; one of which was the '874 Patent. After presenting the Patent Office with applications to eight patents, Align changed strategy, reconfiguring the '874 Patent and applying for the '674 Patent in an attempt to extend the life of the patented claims, which expired in October 2017. Align now contends that the '674 Patent expires in December 2019.

A comparison of the asserted claims of the '674 Patent to claims of the '874 Patent demonstrates that they cover virtually identical subject matter. Align's own expert has testified that there are no non-obvious distinctions between the compared claims.

Because Align is attempting to use claims 17 and 18 of the '674 Patent to extend a patent monopoly on the same subject matter as the expired '874 Patent, those claims are invalid. The application of the doctrine of obviousness-type double patenting is a question of law, making summary judgment appropriate.

## 2.   NATURE AND STAGE OF THE PROCEEDING.

This is a patent infringement case. Align has alleged the infringement of nine patents. ClearCorrect has counterclaimed for a declaration of non-infringement and invalidity of those nine patents. The case was stayed pending the outcome of two proceedings in the International Trade Commission. The original complaint was filed in February of 2011. The case was stayed from May 2012 until January 4, 2017. Pursuant to the Court's scheduling order, discovery is now closed. Trial is set for April 2019.

## 3.   ISSUES TO BE RULED UPON AND STANDARD OF REVIEW.

The issue for the Court is whether claims 17 and 18 of the '674 Patent are invalid under the doctrine of obviousness-type double patenting. The Federal Circuit has held that "[d]ouble patenting is a question of law, which we review without deference." *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384 (Fed. Cir. 2010); *see also Amgen*, 580 F.3d at 1352 (the Federal Circuit "review[s] a court's conclusion on double patenting without deference because 'double patenting is a matter of what is claimed, and therefore is treated like claim construction upon appellate review.'")

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579–80 (Fed. Cir. 1989). The Federal Rules of Civil Procedure are applied to patent cases the same as any other case, and the summary judgment standard is the same for all cases. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc). On a motion for summary judgment, the burden of proof on the contested issue remains with the party bearing the burden of proof at trial, regardless of whether that party is the movant or the respondent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986).

4. **FACTUAL BACKGROUND.**

The Patent Office issued the '874 Patent to Align on November 4, 2006. (**Exhibit 1-A**). Align has claimed a June 20, 1997, priority date for claims 1 and 31 of the '874 Patent based on a June 20, 1997, provisional application. (**Exhibit 1-B**).

The Patent Office issued the '674 Patent on August 16, 2004. (**Exhibit 1-C**). Align has claimed a later December 4, 1998, priority date for claims 17 and 18 of the '674 Patent based on a later December 4, 1998, provisional application. (**Exhibit 1-B**).

Align did not terminally disclaim the '874 Patent during the prosecution of the '674 Patent. (**Exhibit 1-C**).

5. **LEGAL AUTHORITIES AND ARGUMENT.**

   5.1. **The doctrine of double-patenting prohibits the use of multiple patents to extend a patent monopoly.**

The prohibition against double patenting is based on the foundational doctrine of the patent system. Federal Courts have long emphasized the centrality of this doctrine:

> The prohibition against double patenting is a longstanding doctrine of patent law. It is based on the core principle that, in exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent term. As the Supreme Court has explained, "[i]t is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to

>make the thing formerly covered by the patent becomes public property. It is upon this condition that the patent is granted."

*Gilead Sci.,* 753 F.3d at 1212 (citing *Singer Mfg. Co. v. June Mfg. Co.,* 163 U.S. 169 (1896)). And the Federal Circuit has taught that the legal bar against double-patenting was created to preserve the public's rights to obvious modifications of claimed inventions:

>Federal Courts for over a century have applied the principles of the doctrine [of double patenting] as a means to preserve the public's right to use not only the exact invention claimed by an inventor when his patent expires, but also obvious modifications of that invention that are not patentably distinct improvements.

*Gilead Sci.,* 753 F.3d at 1214. Section 101 of the Patent Act "forbids an individual from obtaining more than one patent on the same invention, i.e., double patenting." *AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1372 (Fed. Cir. 2014). The prohibition on double patenting ensures that an inventor cannot evade the limited term of exclusivity provided by the Patent Act by "securing a second, later expiring patent for the same invention." *Id*. at 1373. That prohibition is not limited to "the exact invention claimed by an inventor," but extends also to "obvious modifications of that invention that are not patentably distinct improvements." *Gilead Sci.,* 753 F.3d at 1212. Claims that embody such obvious modifications are invalid for "obviousness-type double patenting." *Id*.

Obviousness-type double patenting is a question of law that must be proved by clear and convincing evidence. *Sun Pharm. Indus.,* 611 F.3d at 1384; *AbbVie*, 764 F.3d at 1373. The Federal Circuit has held that the issue of obviousness-type double patenting is an issue for the court, not the jury, because it is a question of law that considers whether the same invention is being claimed twice. *Amgen*, 580 F.3d at 1352 (stating that it is the Court's role, not the jury's, to determine the metes and bounds of the claimed inventions.).

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 4

To determine whether there is obviousness-type double patenting, the Court performs two steps:

> First, as a matter of law, the court construes the claim in the earlier patent and the claim in the later patent and determines the differences.
>
> Second, the court determines whether the differences in subject matter between the two claims is such that the claims are patentably distinct. A later claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.

*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) (citations omitted). A later expiring claim that is obvious over or anticipated by an earlier-expiring claim is invalid for obviousness-type double patenting. *AbbVie*, 764 F.3d at 1374.

The Court, in performing the obviousness-type double patenting analysis, should limit itself to "a comparison between a patentee's earlier and later claims, with the earlier patent's written description considered only to the extent necessary to construe its claims." *Eli Lilly & Co. v. Teva Parenteral Med., Inc.*, 689 F.3d 1368, 1378–79 (Fed. Cir. 2012). The specification of the early-expiring patent, however, may be used to define claim terms. *In re Hitachi Metals*, *Ltd.*, 603 Fed. Appx. 976, 978 (Fed. Cir. 2015) (nonprecedential) (citing *Application of Vogel*, 422 F.2d 438, 441 (CCPA 1970)).

The law of obviousness-type double patenting looks to the law of obviousness generally. As explained by the Federal Circuit, "[the second part] of the obviousness-type double patenting analysis is analogous to an obviousness analysis under 35 U.S.C. § 103." *Amgen*, 580 F.3d at 1361.

### 5.2.   Step one of the analysis:  all the terms in these claims have their plain and ordinary meaning.

Step one of the obviousness-type double patenting analysis is to construe the claims of the patents.  The Court has provided its ruling on claim construction, holding that all of the disputed terms in the '674 Patent and the '874 Patent have their plain and ordinary meaning.  Docket Entry No. 183.  Neither Party has requested reconsideration or further claim construction.

### 5.3   Step two of the analysis: the comparison of the claim language demonstrates that there are no non-obvious differences.

Step two of the analysis is to compare the claim language of the later patent to the claim language of the earlier patent and to determine if there are any non-obvious distinctions.  The following chart shows the elements the later '674 Patent asserted claims 17 and 18, as identified by Align's expert, Dr. Valley.  (**Exhibit 1-D**).  Each element has been labeled alphabetically for identification during the comparison.

| '674 Independent Claim 17 |
|---|
| **Claim 17[a]**: A method of repositioning teeth using appliances having cavities shaped to receive and resiliently reposition teeth, the method comprising: |
| **Claim 17[b]**: generating a plurality of digital data sets, the plurality comprising an initial digital data set and successive digital data sets, wherein each successive set represents a successive tooth arrangement from an initial tooth configuration toward a final configuration; |
| **Claim 17[c]**: generating a first plurality of successive appliances corresponding to the successive tooth arrangements, the appliances having inner cavities and wherein the inner cavities of successive appliances have different geometries shaped to receive and resiliently reposition teeth from the initial arrangement toward a subsequent arrangement; |
| **Claim 17[d]**: receiving information regarding progress of the patient's teeth following administering one or more appliances of the first plurality of appliances; |
| **Claim 17[e]**: generating a second plurality of appliances based on the information received, the appliances of the second plurality shaped to reposition the teeth from an actual intermediate arrangement to a successive intermediate or final arrangement. |
| **'674 Dependent Claim 18** |
| **Claim 18:** The method of claim 17, wherein the plurality of digital data sets is generated at a stage of treatment prior to the patient wearing any appliance of the first plurality so as to reposition the teeth. |

The following chart shows the elements of the earlier '874 Patent dependent claim 31, including the elements of independent claim 1.  Align currently asserts claim 1 of the earlier '874

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 6

Patent in this case. Align had previously asserted dependent claim 31 of the earlier '874 Patent. The elements as identified by Align's expert, Dr. Valley have been used here. (**Exhibit 1-D**). Again, each element has been labeled alphabetically for identification during the comparison.

| '874 Dependent Claim 31, including Independent Claim 1 |
| --- |
| **Claim 1[a]**: A computer-implemented method for use in creating a treatment plan to reposition a patient's teeth from a set of initial tooth positions to a set of final tooth positions, the method comprising: |
| **Claim 1[b]**: receiving an initial digital data set representing the teeth at the initial positions, wherein receiving the initial digital data set comprises receiving data obtained by scanning the patient's teeth or a physical model thereof; |
| **Claim 1[c]**: generating a set of intermediate positions toward which the teeth will move while moving from the initial positions toward the final positions; and |
| **Claim 1[d]**: generating a plurality of successive appliances having cavities and wherein the cavities of successive appliances have different geometries shaped to receive and reposition teeth from the initial positions toward the final positions, |
| **Claim 1[e]**: wherein the plurality of successive appliances is generated at a stage of treatment prior to the patient wearing any appliance of said plurality so as to reposition the teeth. |
| **Claim 31**: The method of claim 1, further comprising receiving information indicating whether the patient's teeth are moving as planned and, if not, using the information to revise the set of intermediate positions. |

### 5.4    A comparison of the later '674 Patent claim 17 to the earlier '874 Patent claim 31 conclusively demonstrates double patenting.

| Comparison of the later '674 element 17[a] to the earlier '874 element 1[a] | |
| --- | --- |
| **Claim 17[a]**: A method of repositioning teeth using appliances having cavities shaped to receive and resiliently reposition teeth, the method comprising: | **Claim 1[a]**: A computer-implemented method for use in creating a treatment plan to reposition a patient's teeth from a set of initial tooth positions to a set of final tooth positions, the method comprising: |

The comparison of the plain and ordinary meaning of the preamble in both claims shows that both are directed to methods for repositioning teeth. And subsequent language in in Claim 17[b] and Claim 1[b] make it further clear that these claims are directed to "digital data sets," eliminating any non-trivial difference between the preambles. Align's infringement and validity expert, Dr. Valley, was asked during her deposition to identify any distinctions between the two claims. (**Exhibit 1-E**). Dr. Valley did not identify any distinction between element Claim 17[a] and element Claim 1[a] in her testimony. (See **Exhibit 1-E**, 141:9-144:2).

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 7

| Comparison of the later '674 element 17[b] to the earlier '874 element 1[b] & 1[c] ||
|---|---|
| **Claim 17[b]**: generating a plurality of digital data sets, the plurality comprising an initial digital data set and successive digital data sets, | **Claim 1[b]**: receiving an initial digital data set representing the teeth at the initial positions, wherein receiving the initial digital data set comprises receiving data obtained by scanning the patient's teeth or a physical model thereof; |
| wherein each successive set represents a successive tooth arrangement from an initial tooth configuration toward a final configuration; | **Claim 1[c]**: generating a set of intermediate positions toward which the teeth will move while moving from the initial positions toward the final positions; and |

The comparison of the plain and ordinary meaning of Claim 17[b] to Claim 1[b] and Claim 1[c] shows these elements are directed to digital data sets that include: 1) an initial tooth arrangement; and 2) a set of successive tooth arrangements from the initial to the final. Again, Align's infringement and validity expert, Dr. Valley, was asked during her deposition to identify any distinctions between the two claims. (**Exhibit 1-E**). And again, Dr. Valley did not identify any distinction between element Claim 17[b] and elements Claim 1[b] and Claim 1[c] in her testimony. (See **Exhibit 1-E**, 141:9-144:2).

| Comparison of the later '674 element 17[c] to the earlier '874 element 1[d] ||
|---|---|
| **Claim 17[c]**: generating a first plurality of successive appliances corresponding to the successive tooth arrangements, the appliances having inner cavities and wherein the inner cavities of successive appliances have different geometries shaped to receive and resiliently reposition teeth from the initial arrangement toward a subsequent arrangement; | **Claim 1[d]**: generating a plurality of successive appliances having cavities and wherein the cavities of successive appliances have different geometries shaped to receive and reposition teeth from the initial positions toward the final positions, |

The comparison of the plain and ordinary meaning of Claim 17[c] to Claim 1[d] makes clear that these elements are both directed to generating a plurality of successive appliances having cavities with different geometries shaped to reposition teeth from the initial to the final arrangement. Again, Align's infringement and validity expert, Dr. Valley, was asked during her deposition to identify any distinctions between the two claims. (**Exhibit 1-E**). And again, Dr.

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 8

Valley did not identify any distinction between Claim 17[c] and Claim 1[d] in her testimony. (See **Exhibit 1-E**, 141:9-144:2).

| Comparison of the later '674 element 17[d] to the earlier '874 Claim 31 | |
|---|---|
| **Claim 17[d]**: receiving information regarding progress of the patient's teeth following administering one or more appliances of the first plurality of appliances; | **Claim 31**: The method of claim 1, further comprising receiving information indicating whether the patient's teeth are moving as planned and, if not, using the information to revise the set of intermediate positions. |

The comparison of the plain and ordinary meaning of Claim 17[d] to Claim 31 makes clear that these elements are both directed to "receiving information" regarding the movement of a patient's teeth. Neither element limits the information that is received to a specific type. And the plain language of both elements makes it clear that the relevant information is directed to how the patient's teeth have moved or progressed since the treatment plan was implemented. The plain language is clear that there are no non-obvious distinctions between these elements.

Significantly, when Align's infringement and validity expert, Dr. Valley, was asked during her deposition to identify any distinctions between the '674 Patent Claim 17 and the '874 Patent Claim 1, she stated that the only distinction that she saw in the '674 Patent Claim 17 was that it was directed to mid-course corrections while the '874 Claim 1 was not. (**Exhibit 1-E,** 141:9-143:25).[1] Conclusively for this analysis though, Dr. Valley testified that Claim 31 supplied the mid-course correction element that was not in the '874 Claim 1. (See **Exhibit 1-E**, 146:22-147:12). This testimony also demonstrates that there are no non-obvious distinctions between these elements.

---

[1] Dr. Valley did testify that the '874 Patent Claim 1 contained an additional limitation not found in the '674 Patent. However, the inclusion of additional subject matter in the '874 Patent Claim 1 has no effect on the comparison made to determine if the '674 Patent claims are obvious in light of the '874 Patent claims. And in any event, Dr. Valley testified that the additional subject matter was contained in the single element in dependent Claim 18 of the '674 Patent.

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 9

| Comparison of the later 674 element 17[d] to the earlier '874 Claim 31 ||
|---|---|
| **Claim 17[e]**: generating a second plurality of appliances based on the information received, the appliances of the second plurality shaped to reposition the teeth from an actual intermediate arrangement to a successive intermediate or final arrangement. | **Claim 31**: The method of claim 1, further comprising receiving information indicating whether the patient's teeth are moving as planned and, if not, using the information to revise the set of intermediate positions. |

Comparison of the plain language of these two elements shows that both are directed to revising digital data sets based on information related to the movement of a patient's teeth. The only possible distinction between the two elements is that Claim 17[e] expressly states that a second plurality of appliances is to be made from the revised digital data sets.

Critically for this analysis though, Align's own expert has testified that the marginal difference in the wording between these two claims constitutes, at most, an obvious modification to the earlier claim. As discussed above, Claim 31 is directed to the same thing as claim 17[e]; determining if the patient's teeth are moving as planned, and if not, generating a revised set of intermediate positions. It does not spell out the trivial next step: making a second set of appliances based on revised intermediate positions. However, as the Federal Circuit has repeatedly made clear, the doctrine of obviousness-type double patenting applies to obvious modifications of the prior claim. Dr. Valley expressly testified that it would have been obvious to one skilled in the art that they could use the digital data sets in the '874 Patent claims to make appliances. (**Exhibit 1-E,** 149:20-150:6). And this conclusion is undeniable, given that Claim 1 expressly covers the subject matter of using digital data to make appliances. Align cannot seriously dispute that it would be obvious to take data representing a revised treatment plan and use that data to actually create aligners; indeed, there is no other purpose for which that data could be used.

**MOTION FOR SUMMARY JUDGMENT THAT CLAIMS 17 & 18 OF '674 ARE INVALID** – Page 10

### 5.5 A comparison of the later dependent '674 Patent claim 18 to the earlier '874 Patent claim 31 also conclusively demonstrates double patenting.

Claim 18 of the '674 Patent depends on Claim 17. Accordingly, the analysis for Claim 17 above is incorporated here. The analysis for the single additional element of Claim 18 follows.

| Comparison of the later '674 element 18 to the earlier '874 element 1[e] ||
|---|---|
| **Claim 18**: The method of claim 17, wherein the plurality of digital data sets is generated at a stage of treatment prior to the patient wearing any appliance of the first plurality so as to reposition the teeth. | **Claim 1[e]**: wherein the plurality of successive appliances is generated at a stage of treatment prior to the patient wearing any appliance of said plurality so as to reposition the teeth. |

The comparison of the plain and ordinary meaning of these claim shows that both are directed to generating a plurality of digital data sets at a stage of treatment prior to the patient wearing any appliance. Dr. Valley did not identify any distinction between Claim 18 and Claim 1[e] in her testimony. (See **Exhibit 1-E**, 141:9-144:2). Furthermore, Dr. Valley testified that the scope of Claim 18 was in the last element of Claim 1. (See **Exhibit 1-E**, 149:2-19).

### 6. CONCLUSION.

For the reasons set forth above, ClearCorrect asks the Court to grant partial summary judgment that claims 17 and 18 of the '674 Patent are invalid under the doctrine of obviousness-type double patenting in light of the claims of the '874 Patent.

Respectfully submitted,

/s/ *Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
Jeffrey R. Roeser
Texas Bar No. 24089377
Kyle Randall Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com
Email:  jthane@haltomdoan.com
Email:  rroeser@haltomdoan.com
Email:  kakin@haltomdoan.com

MCCLANAHAN • MYERS • ESPEY, L.L.P.

Randy J. McClanahan
Texas State Bar No. 13391500
Michael D. Myers
Texas State Bar No. 00791331
Robert H. Espey, II
Texas State Bar No. 24007163
6750 West Loop South, Suite 920
Houston, TX 77401
Tel: (713) 223-2005

Joseph Alan Callier
Texas State Bar No. 03663500
Callier Law Group PLLC
4900 Woodway Ste. 700
Houston, TX 77056
Tel: (713) 439-0248
Email:  callier@callierlawgrouppllc.com

**ATTORNEYS FOR DEFENDANTS CLEARCORRECT OPERATING, LLC; CLEARCORRECT HOLDINGS, LLC; CLEARCORRECT, INC.**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 15th day of December, 2018, a true and correct copy of the foregoing was served through the Court's ECF electronic filing system to:

Lee L. Kaplan
Smyser Kaplan & Veselka, LLP
700 Louisiana, Suite 2300
Houston, TX 77002
lkaplan@skv.com

Thomas A. Counts, Bar No. 148051 (*pro hac vice*)
Danielle D. Decker, Bar No. 274791 (*pro hac vice*)
Grant N. Margeson, Bar No. 299308 (*pro hac vice*)
PAUL HASTINGS LLP
101 California Street, Forty-Eighth Floor
San Francisco, CA 94111
tomcounts@paulhastings.com
danielledecker@paulhastings.com
grantmargeson@paulhastings.com

Elizabeth L. Brann, Bar No. 222873 (*pro hac vice*)
Jeffrey D. Comeau, Bar No. 259679 (*pro hac vice*)
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
elizabethbrann@paulhastings.com
jeffreycomeau@paulhastings.com

/s/ *Jennifer H. Doan*
Jennifer H. Doan