UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLEARCORRECT, INC., <br> CLEARCORRECT OPERATING, LLC, <br> and CLEARCORRECT HOLDINGS, LLC <br><br> Defendants. | Civil Action No. 4:11-cv-00695-VDG <br><br> **JURY TRIAL DEMANDED** |

## CLEARCORRECT'S MEMORANDUM OF LAW

Defendants ClearCorrect, Inc., ClearCorrect Operating, LLC, and ClearCorrect Holdings, LLC (collectively "ClearCorrect") respectfully submit this Pretrial Memorandum of Law, addressing issues relevant to the disputed jury instructions and to ClearCorrect's equitable defenses, in accordance with the Court's Procedures and Forms.

**I. The Jury Should Be Instructed That Liability Under § 271(a) Requires That One Party Perform Every Step of the Method Within the United States.**

   **A. Under § 271(a), Every Step of the Patented Method Must Be Performed in the United States.**

As the Court acknowledged in its Summary Judgment Order, "[u]nder 35 U.S.C. § 271(a), performing *all* the steps of a claimed method *in the United States* is an act of infringement." Dkt. 306 at 1 (emphasis added). It is well-established that "Section 271(a) is only actionable against patent infringement that occurs within the United States." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005); *accord MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005) ("[T]he reach of section 271(a) is limited to infringing activities that occur within the United States."). Therefore, "to establish direct infringement under § 271(a), [a plaintiff] must show that [a defendant] practiced *all* of the steps of the process patented . . . in the United States." *NTP*, 418 F.3d at 1313 (emphasis added).

All of the asserted method claims of the patents-in-suit require the use of digital data files. For example, claim 14 of the '325 Patent discloses "providing an initial digital data set representing an initial tooth arrangement," "providing a final digital data set representing a final tooth arrangement," and then "producing a plurality of successive digital data sets" based on the initial and final sets that are used to fabricate the aligner trays. '325 Pat. 16:22-26. Claims 1 of the '880 and '874 Patents and claim 30 of the '325 Patent also involve "obtaining" or "providing" or "generating" digital data.

It is undisputed that ClearCorrect sends the data files showing the original tooth position to a separate Pakistani company. The data files used to manufacture the aligner trays are then generated by that company in Pakistan and transmitted to ClearCorrect, which then makes the aligner trays. It is uncontested that at least 85% of ClearCorrect's aligner trays are manufactured using data files generated in Pakistan. Dkt. 247.02 (Rountree Decl. ¶ 12). Therefore, at least the step of "producing a plurality of digital data sets" occurs overseas, not in the United States. In those instances, ClearCorrect does not infringe the asserted method claims under § 271(a) because § 271(a) requires that *each* step of the patented method must be performed in the United States. *See MEMC Elec.*, 420 F.3d at 1375; *NTP*, 418 F.3d at 1314.

### B.   Under § 271(a), All the Steps of a Patented Method Must Be Performed by or Attributable to a Single Entity

Liability under § 271(a) also requires the accused infringer to perform all the steps of the patented method itself or through an entity whose actions can be attributed to the accused infringer. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a *single entity*." (emphasis added)). When the accused infringer does not perform all the steps of a method claim, the patentee must assert a joint infringement claim. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1338-39 (Fed. Cir. 2016). To establish joint infringement, the patentee must plead and prove that the accused infringer: 1) "directs or controls"

the performance of the entire method, or 2) is part of a "joint enterprise" that performs the entire method.[1] *Id.*

Align did not plead joint infringement or include joint infringement in its contentions. Align's failure to timely assert a claim for joint infringement is a second reason that ClearCorrect should not be liable under § 271(a) for the at least 85% of cases where data files are generated by the separate Pakistani company. *See Evicam Int'l, Inc. v. Enforcement Video, LLC*, No. 4:16-CV-105, 2017 WL 10664660, at *1 (E.D. Tex. July 7, 2017) (excluding a joint infringement claim because the complaint did not allege such a claim or plead any facts supporting one).

## II. The Jury Should Be Instructed That Section 271(g) Only Applies to Physical Goods Manufactured Abroad

Section 271(g) prohibits importing into the United States a patented product that was manufactured abroad. Section 271(g) also has two express statutory exceptions for goods that: 1) "are materially changed by a subsequent process," or 2) "become[] a trivial and nonessential component of another product."

Because § 271(a) governs domestic infringement, § 271(g) only applies to goods that are manufactured abroad and then imported. *See, e.g.*, *Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, 813 F. Supp. 2d 602, 613 (D. Del. 2011) ("[T]he court declines plaintiffs' invitation to apply § 271(g) to domestically-manufactured goods . . . ."); *Boston Sci. Corp. v. Johnson & Johnson*, 534 F. Supp. 2d 1062, 1081 (N.D. Cal. 2007) (§ 271(g) was designed to provide a remedy within the United States for patentees whose processes were being used in other countries to manufacture goods for importation into the United States); *Monsanto Co. v. Syngenta Seeds, Inc.*, 431 F. Supp. 2d 482, 487 (D. Del. 2006) (§ 271(g) does not apply if the infringement of the process claims occurs in the United States). As *Asahi Glass* explained:

---

[1] A joint enterprise has four elements:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Akamai Techs.*, 797 F.3d at 1023.

> [T]he fundamental purpose underlying passage of [§ 271(g)] has absolutely no application in a scenario when the patented methods are being used in this country. The rationale is straightforward: Congress recognized that § 271(g) did not have to address unauthorized domestic uses of patented processes, because there are already remedies for such conduct (under 35 U.S.C. § 271(a)).

813 F. Supp. 2d at 614 (quotations and citations omitted).

In addition, § 271(g) "is limited to physical goods that were manufactured and does not include information generated by a patented process." *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1368 (Fed. Cir. 2003); *accord NTP*, 418 F.3d at 1323 (the "transmission of information" is not covered by § 271(g)); *cf. ClearCorrect Operating, LLC v. ITC*, 810 F.3d 1283, 1293 (under the Tariff Act, "articles" means "material things" and does not include intangible data).

The data files used to manufacture ClearCorrect's aligners are the only thing that is "imported" into the United States, and they are just the sort of intangible data that does not fall within the scope of § 271(g). In addition, the data files do not infringe the asserted claims, which cover methods of making the aligner trays, not the data files. Align cannot expand the reach of § 271(g) to over cover goods manufactured domestically or data files that are not infringing.

### III. An Instruction on Apportionment Is Necessary So That Any Reasonable Royalty or Lost Profits Jury Award Complies with Supreme Court and Federal Circuit Law

ClearCorrect provides this memorandum of law as further support for its proposed jury instructions on apportionment (Lost Profits – Amount of Profit and Reasonable Royalty – Apportionment). It is well-settled that if "a patent is for an improvement, and not for an entirely new machine or contrivance," then the patentee "must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Apportionment "is necessary in both reasonable royalty and lost profits analysis." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017).

#### A. Reasonable Royalties Must Be Apportioned and the Jury Must Be Instructed on Apportionment

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018),

cert. denied, No. 18-779, 2019 WL 887884 (U.S. Feb. 25, 2019).  Align's damages expert, Chris Bakewell, agrees: "I understand that a patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features.'"  Bakewell Rep. ¶ 323 (quoting *Garretson*, 111 U.S. at 121).

Apportionment of reasonable royalty damages can involve "careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  The goal is that "the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."  *Id.*

The Federal Circuit encourages district courts to include "a separate instruction [on apportionment] culled from *Garretson*."  *Id.* at 1228 n.5.  This includes an instruction that "fully explain[s] the need to apportion the ultimate royalty award to the incremental value of the patented feature from the overall product."  *Id.* at 1228.  Accordingly, Align does not object to giving some form of an apportionment instruction.

ClearCorrect's proposed instruction (taken from the American Intellectual Property Law Association Model Instructions) satisfies the Federal Circuit's law and is tied to the facts of this case and the issues the jury will need to decide.  First, it tells the jury to evaluate both the royalty rate and the royalty base.  This is particularly important in this case, where the parties dispute both the base and the rate.  It also tells the jury that it should consider the portions of the final product that represent the value of the infringing feature, even if "[t]his may involve estimating the value of a feature that may not have ever been individually sold."  That is fully consistent with *VirnetX, Inc. v. Cisco Sys., Inc.*, and is relevant to the facts of this case.  767 F.3d 1308, 137 (Fed. Cir. 2014).  ClearCorrect's damages expert, Alan Ratliff, bases his royalty on the treatment set up fee, which is individually priced but may not have been "separately sold" with each unit.  The jury should be told that it can use a royalty base that represents a "feature that may not have ever been individually sold."  *Id.* at 1328.

### B.    Lost Profits Must Be Apportioned and the Jury Should Be Instructed on How to Determine the Amount of Lost Profits

Like reasonable royalty damages, lost profits damages also must be tied to the value of the patented invention.  As far back as 1854, the Supreme Court, reviewing an award of lost profits, declared that "it is a very grave error" to instruct a jury "that as to the measure of damages the same rule is to govern, whether the patent covers an entire machine or an improvement on a machine."  *Seymour v. McCormick*, 57 U.S. (16 How.) 480, 491 (1853).  In that case, the failure to instruct the jury to apportion, the Court concluded, led the jury to render an "enormous and ruinous verdict" when the asserted patent was "for an improvement of small importance when compared with the whole machine."  *Id.*  *Seymour* makes clear that a plaintiff is not automatically entitled to all "damages" that can be said to have resulted from a lost sale caused by infringement; rather, the plaintiff must prove the extent to which the claimed lost profits are "actually attributable to the . . . infringement."  Brief of United States as Amicus Curiae Supporting Petitioner, *WesternGeco LLC v. ION Geophysical Corp.*, No. 16-1011, 2018 WL 1168813, at *15 (U.S. Mar. 2, 2018).

The same form of damages was at issue in *Garretson*, where the Supreme Court reaffirmed that the apportionment rule applies "in every case."  111 U.S. at 121.  There, too, the plaintiff sought damages in the form of lost profits "by reason of the infringement."  *Garretson v. Clark*, 10 F. Cas. 40, 41 (C.C.N.D.N.Y. 1878) (Blatchford, C.J.).  The patent there "was for an improvement in the construction of mop-heads," but the patentee "produced no evidence to apportion the . . . damages between the improvement constituting the patented feature and the other features."  111 U.S. at 121.  The Court therefore held that an award of only nominal damages was proper.  *Id.*; *accord Blake v. Robertson*, 94 U.S. 728, 734 (1876) (sustaining an award limited to nominal damages because the patentee failed to show "how much of [his] profit was due to . . . other patents" embodied in the machine that he sold).

The Supreme Court applied the same principles in *Dobson v. Hartford Carpet Co.*, 114 U.S. 439 (1885) and in *Yale Lock Manufacturing Co. v. Sargent*, 117 U.S. 536, 553 (1886).  In *Dobson* the Court considered an award of damages on patents on carpet designs.  114 U.S. at 443.

The Court held that even accepting that the plaintiffs would have "made and sold … the infringing carpets which the defendants made and sold," it was error to "allow[] as damages … the *entire* profit to the plaintiffs . . . , and not merely the value which the designs contributed to the carpets." *Id.* (emphasis added). To award damages based on the entire vale of the carpet would violate "[t]he true rule," set forth in *Garretson* and other cases, that the patentee must apportion "'damages between the patented feature and the unpatented features.'" *Id.* at 445 (quoting *Garretson*, 111 U.S. at 121); *see Dobson v. Dornan*, 118 U.S. 10, 17 (1886) ("The plaintiff must show what profits or damages are attributable to the use of the infringing design."); Amicus Brief of the United States, *Samsung Elec. Co. v. Apple Inc.*, No. 15-777, 2016 WL 3194218, at *11-12 (U.S. June 8, 2016) ("The Court held [in *Dobson v. Hartford Carpet*] that the defendants were liable for only nominal damages because the patentees were unable to establish the portion of their lost profits that was attributable to the patented design, as opposed to the unpatented aspects of the carpet."). *Yale Lock* confirmed that even when the infringement is the "but-for" causing of the patentee's damages, the damages amount must make "proper allowances for all other causes which could have affected the [patentee's] prices," or else the award would overcompensate the patentee. 117 U.S. at 553. A separate accounting for those deductions was thus an essential step in measuring "the difference between [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Id.* at 552.

Without that apportionment, a defendant whose machine includes patented improvements from a "dozen" different inventors could "be compelled to pay … his whole profits to each … inventor[] of some small improvement in the [machine]." *Seymour*, 57 U.S. at 490.

Consistent with the Supreme Court's caselaw, the jury should also be instructed to consider apportionment when evaluating lost profits. Showing that "but for" the infringement Align would have made some portion of ClearCorrect's sales can suffice to show *entitlement* to lost profits, but it says nothing about the *amount* of lost profits and cannot negate the requirement of apportionment. Align is only entitled to the damages caused by *infringement*—that is, damages tied to the value of the patented invention. *See* 35 U.S.C. § 284.

*Mentor Graphics* does not suggest otherwise. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017). In *Mentor*, the jury was "expressly instructed that it could not award lost profits unless it found that 'there were only two acceptable, available alternatives in the [single customer] market during the damages period." *Id.* at 1287 n.6. Because the evidence showed that the one relevant customer, Intel, "would not have purchased emulators without the features claimed" in Mentor's patent, and "only Mentor could sell Intel an emulator with *all* the features it required," the Federal Circuit held that an additional instruction on apportionment was not required. *Id.* at 1289. Here, however, the jury will be instructed on a market share theory which departs from the true *Panduit* factors. The Federal Circuit's opinion in *Mentor* did not consider a market share theory. *Id.* at 1287 n.5 ("The market share theory is irrelevant in this case."). The jury will also have to consider whether there was truly demand for Align's product by ClearCorrect's customers, in light of the products' different sales prices and sales channels. This is not a case where the *Panduit* factors can substitute for the apportionment requirement. Because "but for" causation is required for any entitlement to lost profits, under Align's reading of *Mentor*, anytime a patentee shows entitlement to lost profits, no apportionment is required. That would flout over 150 years of Supreme Court precedents and is inconsistent with the patent damages statute.

ClearCorrect's proposal appropriately incorporates the Supreme Court's apportionment requirement while still instructing the jury to award profits that "Align would have made if ClearCorrect had not infringed."

### C. The Only Exception to Apportionment Is the Entire Market Value Rule (EMVR), Which Is Not at Issue in This Case

EMVR is a "narrow exception" to the rule that damages must be apportioned to the patented feature. *Laser-Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015). It permits a patentee to forgo apportionment only upon showing that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *VirnetX*, 767 F.3d at 1326 n.26

(quoting *Garretson*, 111 U.S. at 121).  Here, Align's damages expert "did not consider the entire market value of the patented products," and instead only "[t]he incremental benefits of the patents-in-suit were considered in determining the baseline royalties."  Bakewell Rep. ¶¶ 312-13.

### IV.     ClearCorrect's Three Equitable Defenses Should Be Decided by the Court After Trial

ClearCorrect has asserted three equitable defenses: 1) equitable estoppel, 2) inequitable conduct, and 3) unclean hands.

Three elements must be established for equitable estoppel to bar a patentee's suit: 1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; 2) the alleged infringer relies on that conduct; and 3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.  *See High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016).

Inequitable conduct requires proof that during patent prosecution the patentee failed to disclose material information, or submitted false information, with an intent to deceive.  *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006).  Once the threshold level of materiality and intent are established, the court must then weigh these factors "in light of all the circumstances to determine whether the applicant's conduct is *so culpable* that the patent should be held unenforceable."  *Id.*

The doctrine of unclean hands requires a plaintiff to "have acted fairly and without fraud or deceit" in the matter before the court.  *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quotations omitted).  That is, unclean hands "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *Id.* (quotations omitted).

The defenses of inequitable conduct, unclean hands, and equitable estoppel, should be tried to the Court after the conclusion of the jury trial on liability and damages.  But, as explained further in ClearCorrect's Opposition to Align MIL #1, Align cannot exclude evidence from the jury that

is relevant to *both* the issues to be tried to the jury and the equitable issues reserved for the Court. For example, the same evidence showing that Align is equitably estopped from suing ClearCorrect also shows that ClearCorrect acted in good faith. Based on Align's motion to dismiss an earlier declaratory judgment action brought by ClearCorrect in which Align represented that it did not intend to sue ClearCorrect, ClearCorrect built its business believing that Align did not intend to assert its patents against ClearCorrect.

Respectfully submitted,

/s/ *Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
Jeffrey R. Roeser
Texas Bar No. 24089377
Kyle Randall Akin
Texas Bar No. 24105422
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com
Email:  jthane@haltomdoan.com
Email:  rroeser@haltomdoan.com
Email:  kakin@haltomdoan.com
Email:  criddell@haltomdoan.com

Chanler Ashton Langham
Texas State Bar No. 24053314
Susman Godfrey LLP
1000 Louisiana St., Ste. 5100
Houston, TX 77002-5096
Tel: 713-653-7839
Email: clangham@susmangodfrey.com

MCCLANAHAN • MYERS • ESPEY, L.L.P.

Randy J. McClanahan
Texas State Bar No. 13391500
Michael D. Myers
Texas State Bar No. 00791331
Robert H. Espey, II
Texas State Bar No. 24007163
6750 West Loop South, Suite 920
Houston, TX 77401
Tel: (713) 223-2005

                Joseph Alan Callier
                Texas State Bar No. 03663500
                Callier Law Group PLLC
                4900 Woodway Ste. 700
                Houston, TX 77056
                Tel: (713) 439-0248
                Email:  callier@callierlawgrouppllc.com

                Elizabeth Moulton
                Orrick Herrington & Sutcliffe LLP
                The Orrick Building
                405 Howard Street
                San Francisco, CA 94105
                Tel: 415-773-5673
                Email: emoulton@orrick.com

                Mark Davies
                Katherine Kopp
                Orrick Herrington & Sutcliffe LLP
                Columbia Center
                1152 15th Street, N.W.
                Washington, DC 20005
                Tel: 202-339-8474
                Email: mark.davies@orrick.com
                Email: kkopp@orrick.com

                **ATTORNEYS FOR DEFENDANTS**
                **CLEARCORRECT OPERATING, LLC;**
                **CLEARCORRECT HOLDINGS, LLC;**
                **CLEARCORRECT, INC.**

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Civil Rules LR5.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 25th day of March, 2019.

                */s/ Jennifer H. Doan*
                 Jennifer H. Doan